CASE NUMBERS: 15-11283

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

CATHERINE S. CADLE,

*Appellant*,

v.

GEICO GENERAL INSURANCE COMPANY,

*Appellee*.

---

Appeal from the United States District Court for the Middle District of Florida
Case Number: 6:13-1591-GAP-GJK

---

GEICO GENERAL INSURANCE COMPANY'S ANSWER BRIEF

---

B. RICHARD YOUNG
COURTNEY F. SMITH
YOUNG, BILL, ROUMBOS & BOLES, P.A.
226 Palafox Place
Pensacola, FL 32502
Telephone: (850) 432-2222
Facsimile: (850) 432-1444
*Attorneys for GEICO GENERAL
INSURANCE COMPANY*

*Cadle v. Geico Ins. Co.*
CASE NO.: 15-11283

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT OF APPELLEE GEICO GENERAL INSURANCE COMPANY</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1 through 26.1-3, Appellee, GEICO GENERAL INSURANCE COMPANY ("GEICO"), hereby submits the following Certificate of Interested Persons and Corporate Disclosure Statement:

Alexander, Megan, Esq.: counsel for Appellee

Berkshire Hathaway, Inc., BRK-A, BRK-B: owner of GEICO

Boyle, Gentile & Leonard, P.A.: counsel for Appellant

Boyle, Esq.; Mark A.,: counsel for Appellant

Cadle, Catherine S.: Appellant

Chafe, Esq., Molly A.: counsel for Appellant

GEICO Corporation: GEICO parent company

GEICO GENERAL INSURANCE COMPANY: Appellee

Government Employees Insurance Company

Hall, Megan M., Esq.: counsel for Appellee

Hassebrock, Esq., Benjamin C.: counsel for Appellant

C 1

*Cadle v. Geico Ins. Co.*
CASE NO.: 15-11283

Marino, Jr., Esq., Stephen A.: counsel for Appellant

Morgan & Morgan, P.A.: counsel for Appellant

Panagakis, Esq., Nicholas P.: counsel for Appellant

Pincavage, Esq., Danya J.: counsel for Appellant

Presnell, The Honorable Gregory A.

Smith, Courtney F., Esq.: counsel for Appellee

Thompson, Jordan M., Esq.: counsel for Appellee

United Policyholders

Ver Ploeg & Lumpkin, P.A.: counsel for Appellant

Young, Bill, Roumbos & Boles, P.A.: counsel for Appellee

Young, B. Richard, Esq.: counsel for Appellee

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Pursuant to Rules 34(a)(1) of the Federal Rules of Appellate Procedure and Rule 34-3(c) of the Eleventh Circuit Rules of Appellate Procedure, the Appellee GEICO GENERAL INSURANCE COMPANY, submits that oral argument is not necessary for this matter. The facts pertinent to the present issue and the applicable legal arguments may be adequately presented in the briefs and the record. The Court's decisional process would not be significantly aided by oral argument.

# **TABLE OF CONTENTS**

**Page**

Certificate of Interested Persons and Corporate Disclosure Statement . . .   C1

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . . . .   i

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ii

Table of Citations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   iv

Table of Record References in Brief . . . . . . . . . . . . . . . . . . . . . . . . . . .   vi

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ix

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

Statement of the Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

      A. CADLE's UM Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

      B. The Instant Bad Faith Action . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

  I.   The District Court Properly Granted Judgment as a Matter of Law
      in Favor of GEICO Because Cadle Failed to Establish that
      Information Available to Geico During the Cure Period Showed a
      Permanent Injury or Economic Damages at or in Excess of the
      Policy Limit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

A. GEICO is entitled to judgment as a matter of law because there was no medical evidence provided to GEICO during the statutory 60 day cure period that Plaintiff sustained a permanent physical injury within a reasonable degree of medical probability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

B. CADLE failed to present evidence that there was information available to GEICO during the cure period to establish permanent injury or economic damages exceeding the policy limit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

C. CADLE's Assertions of Error are Without Merit . . . . . . . .   27

II.   The Duty of Good Faith is Defined by Florida Law. To hold an insurer Responsible for Bad Faith Damages, There Must Be a Causal Connection Between the Alleged Bad Faith Conduct and the Failure to Settle . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   30

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   33

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   34

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   35

# <u>TABLE OF CITATIONS</u>

<u>CASES</u>                                                      <u>PAGE</u>

*Avis Rent–A–Car System, Inc. v. Stuart*,
    301 So. 2d 29 (Fla. 2d DCA 1974) . . . . . . . . . . . . . . . . . . . . . . .  24

*Cruz v. American United Ins. Co.*,
    580 So. 2d 311 (Fla. 3d DCA 1991) . . . . . . . . . . . . . . . . . . . . . .  18

*Harris v. GEICO Gen. Ins. Co.*,
    2015 WL 4619629 (11th Cir. Aug. 4, 2015) . . . . . . . . . . . . . . . .  18, 19

*Harris v. Geico Gen. Ins. Co.*,
    961 F. Supp. 2d 1223 (S.D. Fla. 2013) . . . . . . . . . . . . . . . . . . . .  19-22

*Messinese v. USAA Cas. Ins. Co.*,
    2015 WL 4619808 (11th Cir. Aug. 4, 2015) . . . . . . . . . . . . . . . .  30

*Perera v. U.S. Fid. & Guar. Co.*,
    35 So. 3d 893 (Fla. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30, 31

*Saucer v. City of West Palm Beach*,
    21 So. 2d 452 (Fla. 1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

*State Farm Mut. Auto. Ins. Co. v. Dixon*,
    732 So. 2d 1 (Fla. 3d DCA 1999) . . . . . . . . . . . . . . . . . . . . . . . .  20

### <u>STATUTES</u>

Florida Statute § 624.155 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 9, 10, 13, 16, 18, 19, 22

Florida Statute § 627.727 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

Florida Statute § 627.737 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19, 20, 24

Fed. R. Civ. P. 50 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15, 16

## **PRELIMINARY STATEMENT**

The Appellant, CATHERINE S. CADLE, shall be referred to as "CADLE". The Appellee, GEICO GENERAL INSURANCE COMPANY, shall be referred to as "GEICO".

Citations to the record on appeal will be made by referring to the appropriate district court docket entry number followed by the page number when the cited document has been docketed, otherwise, citations will be made by referring to the appropriate trial exhibit. (For example, "DE 1, p. 1" and "Def. Tr. Ex. 1"). Likewise, citations to the trial transcript will be made by referring to the appropriate district court docket entry number (i.e., 176, 177, or 178) followed by the page number. (For example, "DE 176, p.1").

References to CADLE's Initial Brief will be made by "Initial Brief" followed by the page number. (For example, "Initial Brief, p. 1").

## STATEMENT OF THE CASE

The present appeal stems from a statutory first-party bad faith action brought by CATHERINE S. CADLE ("CADLE" or "Plaintiff"), against GEICO, her automobile insurance provider, pursuant to section, 624.155, Florida Statutes. [DE 1]. CADLE alleges that GEICO acted in bad faith in the handling of her claim for Uninsured/Underinsured Motorist ("UM") benefits arising from an automobile accident ("accident") that took place on July 27, 2007 involving CADLE and Derek S. Friend, an underinsured motorist. [*Id*.]. At the time of the accident, CADLE was insured under an automobile insurance policy issued by GEICO, which provided for up to $75,000 in UM benefits. [DE 143-8].

CADLE, through her attorney, Nicholas Panagakis ("Panagakis"), demanded GEICO pay her the $75,000 UM coverage limit.[1] [DE 78-7–78-12]. When GEICO failed to do so, instead offering to settle the UM claim for less than the policy limit, [DE 77-12; 77-15], CADLE filed a civil remedy notice of insurer violation ("CRN") pursuant to section 624.155, Florida Statutes, accusing GEICO of bad faith for failing to pay the $75,000 policy limit. [DE 77-16].

On **March 18, 2009**, CADLE filed a contractual action against GEICO for UM benefits. [DE 177, p. 197-98]. CADLE then filed an amended CRN on April

---

[1] Two days after the accident, July 29, 2007, CADLE retained counsel to represent her with regard to the accident of July 27, 2007. [DE 177, p. 32]. All communications between CADLE and GEICO referred to herein are with the attorney representing CADLE with regard to her UM claim.

2, 2009, shortly after suit had been filed against GEICO in the Brevard County Circuit Court. The sixty day cure period under Florida law expired on June 1, 2009.

In January 2010, Panagakis informed GEICO that CADLE had undergone surgery on **December 15, 2009**. [DE 77-21]. Shortly thereafter, GEICO agreed to pay its $75,000 limit, but Panagakis rejected the offer, and proceeded to trial. [DE 177, p. 171]. On March 8, 2013, the state court jury rendered a verdict for CADLE and against GEICO in the amount of $900,000. [DE 75-1]. By judgment entered June 20, 2013, the verdict was reduced to the $75,000 policy limit.

Thereafter, CADLE filed the instant bad faith action against GEICO, wherein she seeks to collect the balance of the state court verdict, less setoffs – $741,636.31, plus attorney's fees and costs. [DE 146]. The issue presented to the jury during the bad faith trial was whether "[CADLE] has proven by a preponderance of the evidence that [GEICO] acted in bad faith by failing to settle her underinsured motorist claim?" [DE 178, p. 25]. Answering in the affirmative, the jury returned a verdict for CADLE. [DE 137; 177, p. 71].

After trial, the district court granted GEICO's renewed motion for judgment as a matter of law, holding:

(1)    because the evidence showed that CADLE had "minimal, if any, out-of-pocket economic damages," "the validity of the bad faith claim "depends

entirely on whether GEICO had reason to believe, prior to [expiration of the cure period], that [CADLE] had suffered a permanent injury"; and

(2)    after reviewing all evidence submitted to the jury, the district court could "find no evidence to support [CADLE's] claim that GEICO was aware or should have known that she had a permanent injury prior to January 2010, when Panagakis informed GEICO of [CADLE's] December 2009 surgery."

[DE 163, p. 4-6]. A final judgment for GEICO was entered accordingly and this appeal followed. [DE 165; 171].

## STATEMENT OF THE FACTS

### A. CADLE's UM Claim

On July 27, 2007, CADLE was involved in an automobile accident ("the accident") wherein her vehicle was rear-ended by a vehicle operated by Derek S. Friend ("tortfeasor"), who was insured under a $25,000 automobile policy with Allstate Insurance Company. [DE 78-3]. At that time, CADLE's insurance policy provided stacked Uninsured Motorist ("UM") coverage in the amount of $75,000. [DE 143-8].

That same day, the accident was reported to GEICO [DE 78-1, p. 1]. GEICO immediately began its investigation into the accident, and on July 30, 2007, GEICO obtained the recorded interview of CADLE. [DE 77-4]. Two days after the

accident, CADLE retained Nicholas Panagakis ("Panagakis"), a plaintiffs' personal injury lawyer, to represent her with regard to the accident of July 27, 2007. [DE 177, p. 32].

On August 14, 2007, GEICO received a letter of representation from attorney Panagakis informing GEICO that he represented CADLE for injuries resulting from the accident. [DE 77-6]. On August 22, 2007, GEICO adjuster Renee Griffin ("Griffin") responded to the letter of representation and provided a written confirmation of the coverages available under CADLE's policy. [DE 77-7].

Several months later, on April 3, 2008, Panagakis sent Allstate a demand package, which included medical records and medical bills incurred by CADLE. [DE 78-3–78-6]. Panagakis sent GEICO a copy of the foregoing demand package and requested that GEICO provide written permission along with a waiver of subrogation to settle CADLE's bodily injury claim in the amount of the $25,000 bodily injury limits. [DE 78-3]. In response, on April 14, 2008, GEICO sent correspondence to Panagakis requesting proof of tender so that GEICO could determine its position on subrogation. [DE 77-9].

On May 9, 2008, GEICO received a second letter from Panagakis requesting written permission along with a waiver of subrogation to settle CADLE's bodily injury claim with Allstate. [DE 77-10]. Enclosed within the second letter was a

copy of the release and letter from Allstate confirming its tender of the tortfeasor's $25,000 policy limits. [*Id*.].

On June 2, 2008, GEICO adjuster Grant Crawford ("Crawford") evaluated CADLE's the medical documentation provided to Allstate and found "No Surgery Scheduled Or Final Ppi Rating." [DE 78-1, p. 27]. Indeed, Crawford found no medical report or doctor's opinion indicating that CADLE had suffered a permanent injury as a result of the July 2007 accident. [DE 178, p. 96-97 (Crawford testimony)]. Crawford likewise found no medical report or doctor's opinion indicating that CADLE required surgical intervention as a result of the July 2007 accident. [*Id*.].

On June 3, 2008, GEICO sent correspondence to Panagakis agreeing to waive subrogation and extend the authority for CADLE to settle with Allstate for the policy limits [DE 77-12]. Furthermore, despite not having received a demand for UM benefits, GEICO indicated that it had evaluated CADLE's UM claim and was prepared to offer $500 as settlement of her claim. [177, p. 99-100 (Crawford testimony)]. In the event the offer was rejected, GEICO requested additional documentation to further evaluate CADLE's claim. [DE 77-12]. CADLE rejected the offer. [DE 177, p. 39].

On June 11, 2008, CADLE responded to GEICO's offer by demanding GEICO pay her the $75,000 UM coverage limit. [DE 78-7–78-12]. Panagakis

enclosed CADLE's medical records and medical bills with the demand, however, such records and bills were duplicates of those previously provided to Allstate and evaluated by GEICO. [*Id*.; DE 78-3–78-6].

On July 10, 2008, GEICO supervisor Kathy Watkins ("Watkins") indicated that CADLE appeared to have health insurance "[w]ith Aetna and No Indication of Health Lien." [DE 78-1, p. 29]. Ms. Watkins further notes that there was "no objective evidence of threshold breach for this loss and she has already gotten $25,000" from Allstate. [*Id*.]. Moreover, GEICO evaluated CADLE's medical bills at $34,575.26. Since CADLE received her PIP benefit of $10,000 and $25,000 from Allstate, GEICO concluded that CADLE had incurred no out-of-pocket medical expenses. Ultimately, GEICO did not consider non-economic damages (pain and suffering) because it saw no evidence of permanent injury. That same day, GEICO adjuster Teri Money ("Money") contacted Panagakis' office and left a message indicating there did not appear to be a threshold breach and that out of pocket expenses should have been taken care of by CADLE's health insurance. [*Id*.].

In a letter dated July 11, 2008, GEICO adjuster, Lacey Batchelor ("Batchelor" or "Mathes"),[2] informed Panagakis of her understanding of CADLE's claim:

---

[2] Ms. Batchelor later married, taking the last name "Mathes."

> Initially after the accident she was taken by ambulance to Wuesthoff
> Memorial Hospital where she complained of neck and mid back pain.
> A series of xrays were done with degenerative findings of both the
> cervical and thoracic spine. It was not until August 9, 2007 that she
> sought additional treatment. She went to Parrish Medical Center and
> Rehab and treated for neck and back with right arm tingling. It
> appears that she was discharged as of September 18, 2007 for not
> returning to their office for additional treatments. It appears that her
> treatment with the neurosurgeon consisted of injections into the
> cervical area. There was no final evaluation provided in your demand
> giving any permanency to your client, which leaves a question
> regarding threshold breach. It is my understanding that the tortfeasor
> paid $25,000.00 to your client and given the fact that she has health
> insurance there should be no out of pocket expenses. Please relay the
> offer of $1,000.00 to your client and contact me with your response.

[DE 77-15]. Thus, despite the lack of evidence of a threshold injury or the lack of

evidence of CADLE's out-of-pocket expenses, GEICO increased its offer from

$500 to $1,000. [*Id.*].

However, Panagakis did not respond to Ms. Batchelor's assessment of

CADLE's claim:

| | |
|---|---|
| Mr. Young: | Okay. Now, when you got GEICO's response letter, that response letter that we were just discussing says, "Given the fact that there is health insurance, there is no out-of-pocket." . . . You did not write back to GEICO and say, "Wrong," did you? |
| Mr. Panagakis: | I did not write back to tell Ms. Batchelor something that was incorrect. I assumed that she knew how to do her job. |
| Mr. Young: | So you did not write back and tell them "That's wrong. My client has a federal ERISA lien"? |
| Mr. Panagakis: | No. I provided the health insurance information exactly as requested. |
| Mr. Young: | And you didn't provide the contract, did you? |

| | |
|---|---|
| Mr. Panagakis: | No. We don't provide contracts of insurance in any of these cases. We provide the payment information. |
| Mr. Young: | When she said there are no out-of-pocket expenses, you did not write back and say, "I disagree. Here's the total of the out-of-pocket expenses. You're wrong, ma'am," did you? |
| Mr. Panagakis: | No, I did not tell her that she was incorrect. |

***

| | |
|---|---|
| Mr. Young: | In fact, sir, you didn't send a letter to GEICO taking issue with either of those statements, did you, not the statement that there's no permanency and not the statement that the health insurance is paid and there are no out-of-pockets? You didn't write a letter taking issue with either one of those, did you? |
| Mr. Panagakis: | No. GEICO has medical professionals that they employ and they can do their own evaluations and authorizations and make determinations on their own medically. So I didn't feel I needed to do their job for them. |

[DE 176, p. 183-84].

Panagakis' failure to explain CADLE's position or correct what he perceived to be GEICO's incorrect assessments of the claim, is puzzling. Assuming *arguendo* Panagakis' contention that the records contain evidence of a permanent injury and/or out-of-pocket expenses, it is perplexing that Panagakis would not choose to assist GEICO, or as he phrased it, "do their job for them," since such assistance would have been to the benefit of his client, CADLE, in potentially obtaining the UM benefits to which she claimed she was entitled. Indeed, as noted by the district court, "[i]t's in [Panagakis'] best interest, unless he's trying to set GEICO up, to send them everything that would support his UM

claim." [177, p. 248]. However, as the foregoing testimony demonstrates, Panagakis simply chose not to correct GEICO's evaluation of CADLE's claim, assuming *arguendo* that GEICO's evaluation required any such correction.

On September 17, 2008, Panagakis filed a Civil Remedy Notice of Insurer Violation ("CRN") with the Florida Department of Financial Services alleging violations of section 624.155, Florida Statutes, against GEICO. [DE 77-16]. Therein, CADLE alleged that GEICO engaged in "claim delay", "unfair trade practice" and provided an "unsatisfactory settlement offer." [*Id*. at 2]. Specifically, CADLE alleged that GEICO had an affirmative duty to initiate settlement negotiations and that GEICO had extended an offer of $500 as full and final settlement of the matter [*Id*.]. In describing the facts allegedly giving rise to the claims, the CRN provides that CADLE had "discussed surgical intervention with her treating neurosurgeon." [*Id*.].

GEICO responded to the CRN by letter on November 17, 2008. [DE 77-17]. Therein, GEICO informed Panagakis that the CRN had been filed against the wrong entity, Government Employees Insurance Company, rather than GEICO General Insurance Company [*Id*.]. Further, adjuster Lacey Mathes (formerly Batchelor)("Mathes"), explained the following:

> Your office presented a demand dated June 11, 2008 requesting $75,000.00 settlement for injuries your client sustained in the above-referenced accident . . . Upon reviewing the demand, it appears Ms. Cadle was discharged from Parrish Medical Center and Rehab as of

09/18/07, due to Ms. Cadle not returning to their office for follow up treatment. The diagnostic findings from the emergency room showed degenerative findings, and there was no final evaluation report submitted in the demand giving any permanency for Ms. Cadle, which leaves a questionable threshold breach. Also noted in the records submitted, is a prior surgery to Ms. Cadle's Cervical spine. It would be helpful to forward records on the prior injury for our review as causation is at issue. It appears we have made an offer of $1,000, for settlement of Ms. Cadle's claim, based upon the information presented. I have made contact with your office in an attempt to discuss this matter further. As always, we are willing to discuss and evaluate any additional information presented. I look forward to working with you towards resolution of this claim. Please feel free to contact my office at the number below with any questions.

[DE 77-17, p. 1-2].

Following the 60-day "safe harbor" or "cure period" under section 624.155 expired, and without responding to GEICO's November 2008 correspondence, CADLE filed an action against GEICO for UM benefits on March 18, 2009 in the 18th Judicial Circuit in and for Brevard County, Florida, case number 05-2009-CA-013025 ("underlying action"). [DE 177, p. 197-98; Def. Tr. Exh. 16]. Thereafter, on April 2, 2009, CADLE filed a second CRN with the Florida Department of Financial Services making the same allegations included in the September 2008 CRN but correcting the insurer's name. [DE 77-18].

On May 29, 2009, Mathes sent correspondence to Panagakis confirming receipt of the second CRN and advising Panagakis that:

I have left several messages with your office and have not had a returned call at this time. I left a message on 05/06, 05/12, 05/18, 05/21 and 05/29 . . . Please contact my office at the number below

10

upon receipt of this letter, so that we may discuss resolution of this claim.

[DE 77-19].

On January 12, 2010, GEICO staff counsel Penny Creech ("Creech"), GEICO's attorney in the underlying UM action, forwarded correspondence from Panagakis to Mathes informing GEICO that CADLE had undergone surgery on **December 15, 2009**, specifically, "surgical decompression and reconstruction of the cervical spine with stabilization and fusion" [DE 77-20; DE 177, p. 52 (CADLE testimony)]. That same day, January 12, 2010, Panagakis emailed Creech stating that he sent her the surgical note as soon as he received it. [DE 77-21]. Panagakis stated that based upon the surgery, his client would not accept the $75,000 UM policy limits and would only settle the matter for monies in excess of the policy limits [*Id*.].

On February 2, 2010, GEICO received the results of an independent medical examination conducted by Michael J. Foley, Board Certified Radiologist. [Def. Tr. Ex. 23]. As indicated in the report, Dr. Foley evaluated following studies undergone by CADLE:

(1)    MRI of the Cervical Spine of August 25, 2007;

(2)    MRI of the Thoracic Spine of September 6, 2007;

(3)    Cervical spine series of September 8, 2007;

(4)    Right Shoulder series of September 8, 2007;

11

(5)     Cervical spine series of September 20, 2007;

(6)     Cervical spine series of October 11, 2007;

(7)     Cervical spine series of November 1, 2007;

(8)     MRI of the Cervical Spine of March 6, 2008;

(9)     MRI of the Lumbar Spine of March 6, 2008;

(10)    MRI of the Cervical Spine of July 9, 2009;

(11)    Cervical Spine Series of July 9, 2009;

(12)    CT Scan of the Cervical Spine (Axial views) of July 9, 2009; and,

(13)    CT Scan of the Cervical Spine (Coronal and Sagittal views) of July 9, 2009.

[*Id*. at 1-7]. Based upon his review of the foregoing studies, Dr. Foley concluded as follows:

> The findings discussed above appear chronic and degenerative in nature. I see nothing acute to suggest the findings noted are related to the date of accident of 7/27/07.

[*Id*. at 7]. Thus, the independent medical examination obtained by GEICO did not support CADLE's claim that she sustained permanent injuries as a result of the accident. [DE 177, p. 197-98].

Despite the fact that the independent medical examination by a Board Certified Radiologist found no relation between the medical findings and the accident of July 2007, GEICO tendered the $75,000 policy limits to CADLE. [DE

177, p. 198]. Indeed, GEICO offered CADLE her full $75,000 UM policy limits at the February 3, 2009 mediation, however, CADLE rejected the offer of the UM limits. [DE 177, p. 53, 171].

On March 8, 2013, the jury entered a verdict in favor of CADLE and against GEICO in the amount of $900,000.00 [DE 1-2; 75-1]. On June 20, 2013, Judgment was entered in favor of CADLE in the Underlying Action in the amount of $75,000, the amount of the insurance policy UM limits [*Id*.].

## B. The Instant Bad Faith Action

On October 15, 2013, CADLE filed a complaint against GEICO, her automobile insurance provider, alleging that it acted in bad faith by failing to settle her claim for Uninsured/Underinsured Motorist ("UM") benefits, in violation of section 624.155(1)(b)(1), Florida Statutes. [DE 1]. Therein, CADLE claims that GEICO failed to settle her claim for the $75,000.00 UM policy limits when it could and should have done so.

On December 1, 2014, the matter proceeded to a jury trial. [DE 176]. During the trial of this matter, GEICO made *ore tenus* motions for judgment as a matter of law on the basis that CADLE failed to present any evidence that she had sustained a permanent injury which would have entitled her to non-economic damages and thus no reasonably jury could conclude that GEICO acted in bad faith in its handling of CADLE's UM claim. [DE 126; 130; 177, p. 245-53; 178, p. 70]. The

district court reserved ruling on GEICO's motions for judgment as a matter of law. [DE 127; 131; 177, p. 253; 178, p. 70]. Thereafter, the jury returned a verdict in favor of CADLE. [DE 137; 178:71].

On December 17, 2014, GEICO filed a Renewed Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(b). [DE 143]. Specifically, GEICO argued that CADLE's bad faith expert, Dolbow, testified that at no time prior to CADLE's December 2009 surgery was there any medical record provided to GEICO indicating that Plaintiff had sustained a permanent injury as a result of the underlying accident, nor was there any evidence presented to GEICO from which GEICO could have inferred that Plaintiff sustained a permanent injury. [*Id*.]. Under those circumstances, as GEICO explained, CADLE would only be entitled to recover her out-of-pocket expenses, and that there was no evidence presented as to what out-of-pocket expenses, if any, CADLE sustained. [*Id*.]. Accordingly, GEICO was entitled to a judgment as a matter of law. [*Id*.]. CADLE filed a Response in Opposition [DE 149], and GEICO replied. [DE 158].

On February 24, 2015, the Court entered its order granting GEICO's Renewed Motion for Judgment as a Matter of Law, [DE 163], and on February 26, 2015, the district clerk entered judgment in GEICO's favor and against CADLE. [DE 165]. The district court reasoned that the validity of the bad faith claim "depends entirely on whether GEICO had reason to believe, prior to [expiration of

14

the cure period], that [CADLE] had suffered a permanent injury." [163]. The court

found the evidence insufficient to support a finding that GEICO knew or should

have known that CADLE had a permanent injury before she informed GEICO of

her surgery after expiration of the cure period. [*Id*.]. Thereafter, CADLE appealed

to this Court. [DE 171].

## STANDARD OF REVIEW

A district court's ruling on a motion for judgment as a matter of law under

Rule 50 is reviewed de novo. *See, e.g., Optimum Techs., Inc. v. Henkel Consumer*

*Adhesives, Inc.*, 496 F.3d 1231, 1251 (l1th Cir. 2007). Federal Rule of Civil

Procedure 50(b) allows a party to renew a motion for judgment as a matter of law

made pursuant to Rule 50(a) following entry of a jury verdict. *See* Fed. R. Civ. P.

50(b). Rule 50(b) provides as follows:

> **(b) Renewing the Motion After Trial;** Alternative Motion for a New
> Trial. If the court does not grant a motion for judgment as a matter of
> law made under Rule 50(a), the court is considered to have submitted
> the action to the jury subject to the court's later deciding the legal
> questions raised by the motion. No later than 28 days after the entry of
> judgment--or if the motion addresses a jury issue not decided by a
> verdict, no later than 28 days after the jury was discharged--the
> movant may file a renewed motion for judgment as a matter of law
> and may include an alternative or joint request for a new trial under
> Rule 59. In ruling on the renewed motion, the court may:
>
>> (1) allow judgment on the verdict, if the jury returned a verdict;
>> (2) order a new trial; or
>> (3) direct the entry of judgment as a matter of law.

15

Judgment is properly entered in the defendant's favor as a matter of law when there is insufficient evidence to prove an element of the plaintiff's claim, meaning that no reasonable jury could have found for the plaintiff on that claim. *See Dillon v. Axxsys In'tl, Inc.*, 185 Fed.Appx. 823, 826 (11th Cir. 2006). In making its decision, the court must look at the record evidence and draw all inferences in favor of the nonmoving party. *See id.* The court must then determine whether, in this light, there was any legally sufficient basis for a reasonable jury to find in favor of the nonmovant. *See, e.g., Advanced Bodycare Solutions, LLC v. Thione Int'l, Inc.*, 615 F.3d 1352, 1360 (11th Cir. 2010).

In ruling on a renewed motion for judgment as a matter of law following entry of a jury verdict, ". . . the court should disregard any jury determination for which there is no legally sufficient evidentiary basis enabling a reasonable jury to make it. The court may then decide such issues as a matter of law and enter judgment if all other material issues have been decided by the jury on the basis of legally sufficient evidence, or by the court as a matter of law." Fed. R. Civ. P. 50(b), Advisory Committee Notes.

## SUMMARY OF THE ARGUMENT

The present appeal stems from a statutory first-party bad faith action brought by CATHERINE S. CADLE ("CADLE" or "Plaintiff"), against GEICO, her automobile insurance provider, pursuant to section, 624.155, Florida Statutes. [DE

16

1]. CADLE alleges that GEICO acted in bad faith in the handling of her claim for Uninsured/Underinsured Motorist ("UM") benefits arising from an automobile accident ("accident") that took place on July 27, 2007 involving CADLE and Derek S. Friend, an underinsured motorist. [*Id.*].

Under Florida law, a UM insurer cannot be found in bad faith when it limits its settlement offer, during the statutory 60 day cure period, to economic damages where the insurer had no medical evidence that the insured sustained a permanent injury as a result of the accident. Thus, to prove her claim for non-economic damages of pain and suffering, CADLE was required to establish that GEICO knew or should have known, during the 60-day cure period, that CADLE sustained a permanent injury. However, the undisputed evidence presented at trial failed to establish the existence of a permanent injury during the 60-day  cure period. Indeed, GEICO's Adjuster, CADLE's attorney in the UM case, and CADLE's bad faith expert all testified clearly and unequivocally that no medical record was provided to GEICO from which it could infer that CADLE suffered a permanent injury as a result of the accident. Moreover, CADLE never provided GEICO with any indication that she had incurred out-of-pocket expenses.

Because CADLE failed to provide GEICO with any medical evidence during the statutory 60 day cure period that revealed a permanent injury and never provided GEICO with any indication that she had out-of-pocket expenses, GEICO,

as a matter of law, did not act in bad faith in its handling of CADLE's UM claim. Accordingly, the evidence presented at trial, taken in the light most favorable, demonstrates that there was no legally sufficient evidence for a finding that GEICO acted in bad faith in the handling of CADLE's UM claim, and as such, GEICO respectfully requests that this Court affirm the district court's entry of judgment as a matter of law in favor of GEICO.

## ARGUMENT

I.  **The District Court Properly Granted Judgment as a Matter of Law in Favor of GEICO Because CADLE Failed to Establish that Information Available to Geico During the Cure Period Showed a Permanent Injury or Economic Damages at or in Excess of the Policy Limit**

   A. **GEICO is entitled to judgment as a matter of law because there was no medical evidence provided to GEICO during the statutory 60 day cure period that CADLE sustained a permanent physical injury within a reasonable degree of medical probability**

In Florida, "[a]ny person may bring a civil action against an insurer when such person is damaged: ... by the insurer['s] ... [n]ot attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests." *Harris v. GEICO Gen. Ins. Co.*, 2015 WL 4619629, at *2 (11th Cir. Aug. 4, 2015) (quoting Fla. Stat. § 624.155(1)(b)). However, "no bad faith action shall lie if, within 60 days after a claimant files a CRN, 'the damages are paid or the circumstances giving rise to the violation are corrected.'" *Harris v. GEICO*

*Gen. Ins. Co*., 2015 WL 4619629, at *2 (11th Cir. Aug. 4, 2015) (quoting Fla. Stat. § 624.155(3)(d)).

An insured may recover only economic damages, such as medical expenses or lost wages, where the injuries do not meet the threshold set forth in Fla. Stat. § 627.737(2). *See Harris v. Geico Gen. Ins. Co.*, 961 F. Supp. 2d 1223, 1230 (S.D. Fla. 2013), *aff'd, Harris v. GEICO Gen. Ins. Co.*, 2015 WL 4619629 (11th Cir. Aug. 4, 2015). That provision provides that a plaintiff may recover tort damages for pain, suffering, mental anguish, and inconvenience because of injury arising out of the use of a motor vehicle only if that injury or disease consists in whole, or in part of: (a) significant and permanent loss of an important bodily function; (b) permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement; (c) significant and permanent scarring disfigurement; or (d) death. Fla. Stat. § 627.737(2); *Harris,* 961 F. Supp. 2d at 1230.

These threshold requirements are incorporated in the Florida uninsured motorist statute. Specifically, Fla. Stat. § 627.727(7) provides in pertinent part that, "the legal liability of an uninsured motorist coverage insurer does not include damages in tort for pain, suffering, mental anguish and inconvenience unless the injury or disease described in one or more paragraphs (a)-(d) of 627.737(2)." *See* Fl. Stat. § 627.727(7). Because first party bad faith actions brought against uninsured motorist carriers did not exist in the common law and are statutory in

nature, they must be strictly construed. *Harris,* 961 F. Supp. 2d at 1230. "Thus, an insured seeking non-economic benefits from her or his uninsured motorist carrier, must first meet the threshold requirements enumerated in section 627.737(2)(a-d)." *Id.* (*citing State Farm Mut. Auto. Ins. Co. v. Dixon,* 732 So.2d 1, 2 (Fla. 3d DCA 1999)).

Additionally, this threshold requirement is mandated by the policy of insurance issued to Plaintiff by GEICO in this matter. [DE 143-8]. The policy states in relevant part:

> This coverage does not apply to any damages for pain and suffering that the ***insured*** may be legally entitled to recover against an uninsured motorist unless the injury or disease caused by the uninsured motorist accident resulted in:
>
> (a)    significant and permanent loss of an important bodily function; or
> (b)    permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement; or
> (c)    significant and permanent scarring or disfigurement; or
> (d)    death.

[DE 143-8, p. 23].

CADLE's attorney, Panagakis, along with CADLE's bad faith expert acknowledged at trial that, absent a permanent injury, CADLE was entitled to recover only her economic damages - reasonable medical expenses and lost wages. [DE 176, p. 176]. Even CADLE's expert, Paul Dolbow ("Dolbow"), testified as to

the requirement of a permanent injury under Florida law before an insured is

entitled to pain and suffering. Specifically, Dolbow stated:

| | |
|---|---|
| Mr. Young: | Let's take a look at Defendant's Exhibit 25. Can you see that, sir? |
| Mr. Dolbow: | I do. |
| Mr. Young: | That's the actual policy of insurance GEICO issued to Ms. Cadle? Do you recognize that as an insurance policy? |
| Mr. Dolbow: | Yes, I do. |
| Mr. Young: | And the language that I've highlighted there tracks the Florida statute that requires a permanent injury, within a reasonable degree of medical probability, before someone is entitled to pain and suffering, doesn't it? |
| Mr. Dolbow: | Correct. |
| Mr. Young: | So that is mandated, that requirement, not just by this insurance policy, but by Florida law, correct? |
| Mr. Dolbow: | Yes, sir. |

[DE 177, p. 235-36].

\*\*\*

| | |
|---|---|
| The Court: | And in your understanding of the Florida situation, before you can get non-economic or pain-and-suffering damages, you have to get the threshold issue resolved? |
| Mr. Dolbow: | Correct. |

[DE 177, p. 242]. Thus, in a first party claim for UM benefits, Florida law and the

insurance policy recognize that an insurance carrier is not obligated to simply

tender the UM policy limits at the request of its insured. Instead, the question in a

first party statutory bad faith action is whether, in the totality of the circumstances,

the insurer acted reasonably towards its insured. *See Harris*, 961 F. Supp. 2d at 1223; *Cruz v. American United Ins. Co.,* 580 So.2d 311, 312 (Fla. 3d DCA 1991).

Under Florida law, a UM insurer cannot be found in bad faith when it limits its settlement offer, during the statutory 60 day cure period, to economic damages where the insurer had no medical evidence that the insured sustained a permanent injury as a result of the accident. *Harris*, 961 F. Supp. 2d 1223. In *Harris*, the Plaintiff was insured under a UM policy in the amount of $100,000. As in the instant action, Harris complained of back and neck pain following an accident and underwent conservative treatment that consisted of painkillers, anti-inflammatories and physical therapy. *Id*. Harris made a formal demand for the $100,000 policy limits to her UM insurer, GEICO, enclosing medical bills of $34,111.76. *Id*. In response GEICO offered $17,156.47 to settle the matter. *Id*. at 1226. In response, Harris served a Civil Remedy Notice ("CRN") pursuant to Fla. Stat. § 624.155. *Id*. Harris also indicated that she was a candidate for a percutaneous discectomy surgery. GEICO responded to the CRN and again offered $17,156.47 to settle. Thereafter, Harris again demanded the UM policy limits and advised that she was scheduled for surgery. Ultimately, Harris underwent the surgery, and GEICO offered $25,000 indicating that Harris had undergone a "questionable medical procedure."

Following suit in the state court on the underlying UM action, Harris brought suit against GEICO for bad faith alleging that GEICO should have settled her claim during the statute's "safe harbor" period based on the medical information that was available to the insurer at that time. The jury returned a verdict for Harris and GEICO moved for judgment as a matter of law on the issue that Harris did not demonstrate a permanent injury within a reasonable degree of medical probability during the safe harbor period. *Id*. at 1230-1231. The Honorable Judge Ryskamp granted judgment as a matter of law, notwithstanding the jury verdict, in favor of GEICO. *Id*. at 1232. The Court reasoned that GEICO was entitled to judgment, notwithstanding the verdict, because Harris never provided GEICO with any medical evidence of permanent physical injury during the sixty (60) day cure period. *Id*. Further, the Court reasoned that Harris never indicated to GEICO that she would be willing to settle for anything less than the policy limit, despite the fact that her economic damages were less than the policy limit. *Id*. The Court determined that Harris' failure to provide medical evidence of permanency to GEICO was reasonable grounds for GEICO to limit its offer to economic damages demonstrated during the cure period. *Id*. The Court noted that the legal standard in Florida with regard to entitlement to non-economic damages did not turn on whether she or her counsel believes or anticipates a finding of permanent

23

injury. *Id.* Rather, the standard is whether the injury and the permanency thereof can be established within a reasonable degree of medical probability. *Id.*

The *Harris* opinion is in accord with Florida law in that the legal standard with regard to entitlement to non-economic damages is whether the permanency of the injury can be established within a reasonable degree of medical probability. *Id.*; *see also Avis Rent–A–Car System, Inc. v. Stuart,* 301 So.2d 29 (Fla. 2d DCA 1974). For example, *Avis Rent–A–Car System, Inc.* involved a car accident wherein the victim attempted to prove the presence of a permanent injury as defined by F.S.§ 627.737. *Id.* The claimant complained of neck and back pain, saw a physician three times and had seven physical therapy treatments. *Id.* The trial judge found that the claimant was experiencing pain at the time of trial, but the only medical testimony presented was from the attending physician who testified that the claimant had no permanent injury. *See id.* The trial court found the existence of a permanent injury based on the claimant's complaints of pain. *See id.* The court of appeals reversed, reasoning that "if the doctors who treated appellant do not say there is any permanent injury, the jury composed of laymen certainly could not be expected to say there was such injuries; if they did it would be reversible error." *See id.* (*quoting Saucer v. City of West Palm Beach,* 155 Fla. 659, 21 So.2d 452, 455 (1945)).

**B. CADLE failed to present evidence that there was information available to GEICO during the cure period to establish permanent injury or economic damages exceeding the policy limit**

There was no evidence presented at trial to show that information was available to GEICO, at any time through expiration of the 60-day cure period, that would show CADLE suffered a permanent injury. Indeed, the evidence was all to the contrary. GEICO Adjuster Mathes testified that at the expiration of the April 2, 2009 CRN 60 day cure period, she had no indication that CADLE had sustained a permanent injury. Specifically, Ms. Mathes stated:

> Mr. Thompson:     Okay. At this point in time, May 2009, did you have any indication that Ms. Cadle had any diagnosis of a permanent injury?
>
> Ms. Mathes:     No.

[DE 177, p. 168].

> Mr. Thompson:     Prior to receiving this operative report on January 12, 2010, did you have any indication that Ms. Cadle was going to undergo a cervical fusion?
>
> Ms. Mathes:     No.

[DE 177, p. 170].

In addition to the testimony of GEICO Adjuster Mathes, CADLE's attorney in the UM action, Panagakis, and CADLE's bad faith expert, Paul Dolbow ("Dolbow") likewise agreed that the record was devoid of any evidence showing permanency. Panagakis admitted that there was nothing in the documentation

provided to GEICO that indicated CADLE suffered a permanent injury as a result of the accident:

| | |
|---|---|
| Mr. Young: | Is there a report in here from Dr. Deukmedjian saying, "I find she has a permanent injury from this accident?" |
| Mr. Panagakis: | **There is no report either way, sir. It was never requested nor written**. |
| Mr. Young: | Sir, is the answer to my question no, there is no report in there that says there's a permanent injury? |
| Mr. Marino: | Objection; asked and answered. |
| The Court: | No. He qualifies his answers. Listen to the question and answer it the best you can. Let's move on. |
| Mr. Panagakis: | **There's no report to that effect**. |

[DE 176, p. 175 (emphasis added)].

CADLE's bad faith expert, Paul Dolbow ("Dolbow"), agreed that no information was available to GEICO, through the expiration of the 60-day cure period, that indicated CADLE sustained a permanent injury. [DE 177, p. 236, 241]. Specifically, Dolbow testified that when GEICO received CADLE's demand for the $75,000 policy limits and the two Civil Remedy Notices, there were no medical record that indicated CADLE had suffered a permanent injury:

| | |
|---|---|
| Mr. Young: | In this case, when GEICO received the demand package dated June 11, 2008, there was not a single medical record stating that Mrs. Cadle had suffered a permanent injury from the accident, was there? |
| Mr. Dolbow: | **Not that I saw**. |
| Mr. Young: | Are you aware that when the two civil remedy notices were filed, September 17, 2008, and then on April 2, 2009, there still was not a single medical record provided to GEICO stating Ms. Cadle had a permanent injury from the accident? |
| Mr. Dolbow: | **No, there was not anything provided** . . . |

26

[DE 177, p. 236 (emphasis added)]. What is more, when CADLE's counsel attempted to rehabilitate Dolbow's devastating testimony, Dolbow's response was consistent and again unequivocal:

| | |
|---|---|
| Ms. Pincavage: | Prior to the surgery, were there any medical records in Mrs. Cadle's file from which you could infer a permanent injury? |
| Mr. Dolbow: | **No**. |

[DE 177, p. 241]. Very shortly after the above comment, CADLE rested. [DE 177, p. 243].

## C. CADLE's Assertions of Error are Without Merit

CADLE contends that the district court failed to consider the evidence and draw all reasonable inferences in favor of CADLE. [Initial Brief, p. 16]. Specifically, CADLE highlights four facts that she claims "illustrate the district court's failure to view the trial evidence in CADLE's favor": (1) the nature of CADLE's injury and the longevity of her treatment allegedly permitted a reasonable inference that her injury was permanent; (2) GEICO allegedly acknowledged it had evidence that CADLE's injury may be permanent, but chose not to investigate; (3) the district court improperly weighed the conflicting testimony of CADLE's expert in GEICO's favor; and (4) the district court overlooked the significance of GEICO's disputed conversation with CADLE's

attorney, Panagakis, wherein Panagakis allegedly advised GEICO that CADLE would be having surgery. GEICO will discuss each contention in turn.

As to CADLE's first assertion, the testimony at trial clearly showed that a permanent injury could not be reasonably inferred from the medical records provided to GEICO. [DE 176, p. 175 (Panagakis testimony); 177, p. 168, 170 (Mathes Testimony; 177, p. 236, 241 (Dolbow Testimony)].

As to CADLE's second assertion, CADLE relies upon GEICO's letters to Panagakis to somehow articulate that GEICO tacitly admitted that CADLE's injury was permanent. [Initial Brief, p. 17]. Specifically, CADLE highlights the phrases "question regarding threshold breach" and "questionable threshold breach," which appear in GEICO's letters of July 11, 2008 and November 17, 2008, respectively. However, when the foregoing phrases are considered in their proper context, it is clear that GEICO was raising the fact that the medical documentation did not support CADLE's claim of permanency. More fully stated, the July 11, 2008 letter provides that:

> There was no final evaluation provided in your demand giving any permanency to your client, which leaves a question regarding threshold breach.

[DE 77-15]. More fully stated, the July 11, 2008 letter provides that:

> The diagnostic findings from the emergency room showed degenerative findings, and there was no final evaluation report submitted in the demand giving any permanency for Ms. Cadle, which leaves a questionable threshold breach.

28

[DE 77-17]. Thus, it is evident that GEICO never tacitly admitted or acknowledged that CADLE sustained a permanent injury.

Despite CADLE's third assertion that the district court improperly weighed an alleged misstatement of CADLE's Bad faith expert is, Dolbow's testimony was consistent and unequivocal. Indeed, as noted by the district court:

> Plaintiff's counsel contends that this was simply a misstatement by her expert, but on redirect, in an attempt to rehabilitate Mr. Dolbow, Plaintiff's counsel asked whether a permanent injury could have been inferred from the medical records provided to GEICO prior to her surgery and he responded unequivocally, "No."

[DE 163, p. 5]. In an attempt to create a conflict in Dolbow's testimony, CADLE cites testimony wherein Dolbow states: "Well, I inferred a permanent injury from the nature of the injuries that she had and the surgery that she underwent." [Initial Brief, p. 19; DE 177, p. 241]. However, CADLE overlooks the true import of Dolbow's statement – that his "inferred" finding of permanent injury was based upon "the surgery that she underwent" after the expiration of the 60-day cure period. For Dolbow's inference of permanent injury to be germane to the instant case, it must have been based upon information GEICO was provided prior to the expiration of the 60-day cure period, but it was not. Thus, (1) Dolbow's testimony regarding the lack of medical documentation establishing a permanent injury was unequivocal, even when CADLE attempted to rehabilitate such testimony, and (2) Dolbow's inference of permanent injury from the subsequent surgery is immaterial

and of no moment to the pointed inquiry in this case: whether the medical information provided to GEICO before the expiration of the cure period showed a permanent injury.

As her fourth assertion, CADLE refers to an unsubstantiated, undocumented alleged statement that Panagakis informed GEICO that CADLE intended to undergo surgery. [Initial Brief, p. 20]. However, this alleged conversation was disputed by GEICO, not in their records, and even Panagakis' notes regarding same merely indicate that CADLE was "delaying the inevitable in not getting surgery." [Plf.'s Tr. Exh. 12]. What is more, the note does not indicate that the cervical fusion was necessary or scheduled for surgery. Furthermore, it is puzzling that Panagakis could inform GEICO that CADLE was scheduled to undergo surgery in December 2009, when Panagakis admitted that CADLE did not begin treating again until July 2009, nearly a month after his alleged phone call with GEICO. [DE 176, p. 205]. As such, this disputed fact alone is not a sufficient basis to find GEICO in bad faith as a matter of law.

## II.   The Duty of Good Faith is Defined by Florida Law. To hold an insurer Responsible for Bad Faith Damages, There Must Be a Causal Connection Between the Alleged Bad Faith Conduct and the Failure to Settle.

Under Florida law, an insurer has a duty to handle claims as one would "in the management of his own business." *Perera v. U.S. Fid. & Guar. Co.*, 35 So. 3d 893, 898 (Fla. 2010) (citation omitted); *see also, Messinese v. USAA Cas. Ins. Co.*,

2015 WL 4619808, at *3 (11th Cir. Aug. 4, 2015). This "duty of good faith" includes a duty to attempt settlement "where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so." *Perera,* 35 So. 3d at 898–99 (citation omitted). "Breach of this duty may give rise to a cause of action for bad faith against the insurer." *Id.* at 898.

In Florida, either a third-party claimant or the insured may bring this claim "when an insurer has breached its duty of good faith and that breach results in an excess judgment being entered against its insured." *Id.* at 899. To fulfill the duty of good faith, an insurer does not have to act perfectly, prudently, or even reasonably. Rather, insurers must "refrain from acting solely on the basis of their own interests in settlement." *State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So. 2d 55, 58 (Fla. 1995). Moreover, a valid bad-faith claim must show "a causal connection between the damages claimed and the insurer's bad faith." *Perera,* 35 So. 3d at 903–04. Accordingly, to prevail in this appeal, CADLE must provide sufficient evidence for a reasonable jury to conclude that GEICO acted in bad faith **and** that GEICO's bad faith was the cause of the failure to settle.

Lacking any evidence that GEICO was on notice that CADLE sustained a threshold permanent injury prior to her surgery in December 2009, CADLE argues that GEICO should have investigated the matter more fully. Indeed, CADLE provides a litany of ways she believes GEICO could have handled her claim better.

For example, CADLE argues that in order to fulfill its duty to conduct an adequate investigation, GEICO should not have relied on CADLE's attorney to provide it with complete medical records and instead should have obtained its own set of medical records and requested an independent medical examination of CADLE. But, as held by the district court:

> . . . the insurer's duty does not go this far. Reliance on the documents provided by and representations made by Plaintiff's lawyer cannot amount to bad faith, and Plaintiff has cited no authority to the contrary. Rather, the insurer is entitled to rely on the documents provided by Plaintiff's counsel, and the representations made by him concerning his client's claim.

[DE 163, p. 5].

Moreover, there is no evidence that such additional investigations would have produced a different result. For example, CADLE contends that GEICO should have conducted an independent medical examination. In fact, GEICO commissioned such a review, and the findings thereof were completely consistent with GEICO's evaluation of CADLE's documentation. [Def. Tr. Exh. 23].

Despite CADLE's contentions to the contrary, the record demonstrates that GEICO sought to settle the claim. Notably, shortly after learning of CADLE's December 2009 surgery, GEICO agreed to pay its $75,000 limit, but CADLE rejected the offer. Notwithstanding GEICO's numerous attempts to settle CADLE's claim, Panagakis continuously and methodically refused to engage GEICO's repeated attempts to resolve the matter. In any event, even assuming

*arguendo* that CADLE could possibly establish bad faith on the part of GEICO, CADLE must still show that GEICO's bad faith **caused** the failure to settle, which, as a matter of law, she did not do.

## CONCLUSION

For the reasons stated herein, GEICO respectfully requests that this Court affirm the district court's entry of Judgment as a Matter of Law in favor of GEICO.

Respectfully submitted this 17th day of August, 2015.

**s/ COURTNEY F. SMITH**
**B. RICHARD YOUNG**
Florida Bar No.: 442682
ryoung@flalawyer.net
**COURTNEY F. SMITH**
Florida Bar No.: 067388
csmith@flalawyer.net
Young, Bill, Roumbos & Boles, P.A.
Post Office Drawer 1070
Pensacola, Florida 32591-1070
Tel.: (850) 432-2222 / Fax: (850) 432-1444
Counsel for Appellee, GEICO GENERAL INSURANCE COMPANY

## CERTIFICATE OF COMPLIANCE WITH PAGE LIMITATION
## <u>AND FORMATTING REQUIREMENTS</u>

I certify that this brief complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B). This brief contains 7,809 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of 32(a)(6), as this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman, 14 point font.

*s/ COURTNEY F. SMITH*
**COURTNEY F. SMITH**
Florida Bar No.: 067388
csmith@flalawyer.net

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this <u>17th</u> day of August, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/ COURTNEY F. SMITH*
**B. RICHARD YOUNG**
Florida Bar No.: 442682
ryoung@flalawyer.net
**COURTNEY F. SMITH**
Florida Bar No.: 067388
csmith@flalawyer.net
Young, Bill, Roumbos & Boles, P.A.
Post Office Drawer 1070
Pensacola, Florida 32591-1070
Tel.: (850) 432-2222 / Fax: (850) 432-1444
Counsel for Appellee, GEICO GENERAL INSURANCE COMPANY

**<u>SERVICE LIST</u>**
*Catherine S. Cadle v. GEICO General Insurance Company*
**CASE NO.: 15-11283-A**
**Eleventh Circuit Court of Appeals**

**MARK A. BOYLE, ESQ.**
**MOLLY A. CHAFE, ESQ.**
Boyle, Gentile & Leonard, P.A.
2050 McGregor Blvd.
Fort Myers, Florida 33901-3420
mboyle@boylegentilelaw.com
mchafe@boylegentilelaw.com
**Counsel for United Policyholders (*Amicus Curiae*)**
*Via CM/ECF Notice of Filing*

**STEPHEN A. MARINO, JR., ESQ.**
**DANYA J. PINCAVAGE, ESQ.**
**BENJAMIN C. HASSEBROCK, ESQ.**
Ver Ploeg & Lumpkin, P.A
100 S.E. Second Street, 30th Floor
Miami, Florida 33131
Smarino@vpl-law.com
Dpincavage@vpl-law.com
bhassebrock@vpl-law.com
**Counsel for Appellant, Catherine S. Cadle**
*Via CM/ECF Notice of Filing*